to the next case on our calendar, which is United States of America versus Derounian. Morning, everyone. How are you? Good, thanks. Our grandchildren gifted us a cold, so if I have to take a sip of water, I'd appreciate it. The issue in this case is whether Mr. Derounian had a right to reasonably rely on the government sentencing guideline estimate that was included in his plea agreement. We believe that he did based on a review of the four factors identified by the court in United States versus Wilson. Although the language in the plea agreement gave both the government and the court all the latitude they need to impose whatever sentence was required by the guidelines or at the time, the information before the court at the time. That's correct, but that same language, virtually the same language, was included in the Wilson plea agreement that I pulled off of the court's website in Mr. Walker's appeal. Virtually the same language, so that can't be the controlling factor in determining whether or not there was a reasonable expectation. His lawyer, however, at the sentencing, the lawyer representing him at the sentencing, said there might be a difference in the criminal history category because there was a murder that was unreported so far, so he alerted the court, and of course Mr. Darunian knew that the sentencing estimate could go higher. That was all at the sentencing, right? Correct. The sentencing guideline estimate in the plea agreement was... 71 or... 51 to 63 months if Mr. Darunian qualified for criminal history category. Two, there was always an understanding that he could be category three if he was still on parole for that murder conviction. Didn't he have lifetime parole? Yes, he did. In fact, he did, but at the time there was a question about whether or not he was still on parole, and even if his guideline range was bumped up to category three, the high end of that guideline sentencing range was 71 months, still considerably lower than the 121 month sentencing ultimately received. Of course, that's without the child pornography additions to the sentence. Correct. Which they did not know at the time of sentencing, but they said we are free to add if we get new information. We're free to give you a different estimate. I agree, but the search warrant for the child pornography was issued in August of 2016. The estimate was given twice by the United States Attorney's Office, once in January of 2017 and then again in about a year later, long after they had access to what was on the electronic devices that were seized from his house. Counselor, you made a motion just this week to include in the appendix the information about the search warrant for the computer. Is that correct? You didn't have it at the time you prepared this appeal? No, I did not. I've been trying to get that document since I was assigned to this case. I had difficulty dealing with trial counsel. He had some family issues, COVID, etc. The court had to actually issue an order for him to turn over his trial file to me. When I got that, there was no warrant in it. Last July, I asked the United States Attorney's Office to send it to me. I didn't get it. Finally, I got it about a week ago. We didn't even know if one existed, but it does exist. It was issued in August of 2016. That gave the investigators full access to the electronic devices. You don't have an objection, then, to that material being the court had sentencing? No. Okay, go on. Back to the plea agreement says that even if the guidelines estimate turns out to be wrong, the government is not deemed to be in breach. How do you get around that language? I have in front of me, Your Honor, the plea agreement in the Wilson case. The defendant's name in that case was Walker. Paragraph three of that plea agreement is word for word the same as Mr. Deronio's. I understand, but in Walker, there were some other circumstances, including the passage of four years. How do we get around that language? There was a passage of two years. There was two years between the time the devices were searched and the estimate was given to Mr. Deronio in the plea agreement. How do we get around the language? We just ignore it, is what you're saying? No. The government has an obligation when they prepare these estimates for plea agreements to know what the evidence is. For example, if it's a drug case, they have to know what... There clearly was some uncertainty. Even defense counsel said it on the record. The magistrate judge made it clear that indeed there was uncertainty. There's the plea agreement. When you look at all that combination of factors and circumstances, how can we conclude that the pre-sentence report was issued? That's how we know. But they still had a right to look at it. Didn't they have a right to look at the evidence whenever it came under their control? Excuse me. I didn't hear the first part of it. I said, doesn't the government have a right to look at the evidence? That's my point. The United States Attorney's Office didn't look at the evidence, didn't look at the images before they prepared this estimate. The prosecutor admitted he didn't look at it until after the pre-sentence report was issued. How can a prosecutor give a good faith estimate as to the guideline range without looking at the evidence? They got to know what drug quantities are. They have to know what losses are in financial crimes. They have to know how many victims or at least have a good idea. They got to know how many aliens were smuggled into the country. In this case, they didn't look at the evidence. There was also clearly information not known to the government that defense counsel and the government agreed to as to the criminal history, which was very significant here. And so these were estimates at the plea hearing. He agreed that there were no promises made concerning what his sentence would be. And the Pimentel estimate contained in the plea agreement was not binding. And he had as much knowledge as anybody else or more knowledge as anybody else about what the true scope of his conduct in past was. When the government specifically retains the option of advocating for a higher sentence, I don't understand how it can be found to have reached. And I gather you're not conceding, you're not alleging that the government acted in bad faith in some way. They say they didn't know, they couldn't see from the thumbnails exactly what was depicted in the pornography, child pornography that your client had. So I'm not sure, again, why you can argue breach here. They didn't look at the evidence. That's how, I mean, if a prosecutor is going to give a good faith estimate as to the guidelines, they have to look at the evidence. And everyone knows that looking at these images is horrible, but you got to do it. I have no excuse for the defense attorneys not looking at it, but the prosecutor in preparing the estimate certainly had an obligation to look at it. And the other curious part of this case is if you look at the the probation officer says there was a total of 514 images. The majority of the defendant's collection was child erotica, which may not be, as the pre-sentence report indicates, may not even been illegal to possess. So this is a good spot. You reserve three minutes for rebuttal. Let's hear from the government. Counsel? Unmute your... Looks to me like he's frozen. Counsel? Judge? You, Weinberg. He's frozen. Join the meeting. Mr. Miserec? This is Joanne Navickas. Can you hear me? Yes, I can hear you, but I can't see you. Judge, I have been notified that... Oh, here he is. Mr. Miserec has not been able to hear the argument. Is the court able to hear me? Yes. Wait, he's come alive. Looks to me like he's frozen. Is the court able to hear me? Join the meeting. We can hear you now, Mr. Miserec. This is Joanne Navickas. Can you hear me? Yes, I can hear you, but I can't see you. Judge, I have been notified that... Oh, here he is. Mr. Miserec has not been able to hear the argument. Is the court able to hear me? Yes. I'm sorry. Okay, we can't have both... Ms. Navickas, do you want to do the argument for the government? Your Honor, I would prefer that Mr. Miserec do the argument. He has listened to the argument online, and I will try to mute myself and see if that makes a difference here. And see if he can unmute. Mr. Miserec, the floor is yours. You must unmute your computer, and then you may argue. I don't think he can hear us. Mr. Miserec, you need to unmute. Oh, there you are. Okay, you may proceed. I can't do that. I can't hear us. He can't hear us.  Use the telephone and call in on the number. He can't hear us, even for that suggestion. Yeah. Judge, I have his phone number. I'm going to be calling him right now just to suggest that he call us. Okay, we'll give you a minute or two to do that. He apparently was able to hear us before because he said, apparently, he heard the argument. Judges, he's going to try to join us by phone right now. I just told him that he can do that, and I directed him to the information. So he's going to try to do it right now. Okay, that's wonderful. Thank you. You're welcome. Okay. Well, Mr. Miserec is not on our screen any longer. If he's attempting to make a phone call, we should see some sign of that, and we do not. What I'm going to do is ask Mr. Williams to hold, to wait here and give Mr. Miserec the time he needs to get online and take the next argument in the interim. We'll get back to you, Mr. Williams. You have rebuttal time, and we hope we can hear from the government. Thank you for waiting. In the interim, I'm going to call Burke versus the United States of America. Good morning to everyone. My name is Justin Bonas. Mark Miserec. There he is. Oh, where is he? Mr. Miserec, are you there? Join the meeting. I'm going to let him in now. Okay, there he is. Thank you. Hold on, Mr. Bonas. We're going to go back. Will do, Your Honor. I'm going to mute myself. Good morning, Mark. Mark Miserec is here on the telephone. Great. All right, proceed. I apologize, and I would just start by saying I did miss a couple minutes of my colleague's argument, but may it please the court. My name is Assistant United States Attorney Mark Miserec. I was the assigned assistant in the underlying matter before this court. The appellate's contention that the government breached the terms of the plea agreement here, that contention is without merit. Were you the trial counsel? I am, Your Honor. Were you the trial counsel below, Mr. Miserec? I was, Your Honor. Okay, proceed. The critical question in determining whether or not the government breached is did the defendant reasonably understand and expect what his sentence would be? Based on the four corners of the plea agreement, coupled with the colloquy at the time of the defendant's plea between the defendant and the assigned magistrate at the time, it cannot be said that the defendant in any way could have reasonably expected that the government was bound by the guidelines. But the opposing counsel says that you didn't look at all the evidence you had before you prepared the plea agreements. Is that correct? Your Honor, I did hear that portion of counsel's argument. The inspector or agent in charge of the case, he reviewed the files, and as it's contained in our brief, when I was asking him, when I thought I was asking him for the number of total images, he was reporting back to me the number of identified children. So did I physically go and look at the actual videos and photographs? I did not. I was relying on the representations of the inspector or agent, whatever you'd like to call him, and that is typically how we review that type of evidence. It's unfortunate in this case that it was, from the government's perspective, a good faith miscommunication, but that's what it was, a miscommunication. I would also point out, if counsel is arguing that the government didn't look at the images, defense counsel, prior to the counsel at the time of the plea, was put in contact with the postal inspector, and defense counsel at the trial level was also invited at any time to go and look at the images. How do you distinguish? Oh, go ahead, Judge Pooler. No, I mean, how do you prepare a plea agreement without knowing the full range of evidence that you have, and for which you're recommending a sentence of the defendant? Well, Your Honor, the plea agreement was, part of the plea agreement was based on the number of images, and the total number of images was, it was conveyed to me, what I thought, by the special agent. And again, it was unfortunately a miscommunication, but I thought the agent had reviewed all of them. It was just, again, an unfortunate miscommunication. But nonetheless, why shouldn't the government be charged with assessing the evidence that was available to it? And that creates the reasonable expectations of the defendant in sentencing. And, you know, opposing counsel points to Wilson, which had very similar language in the plea agreement, giving the government room to maneuver, but still allowed that the expectations were breached when the government came up with more evidence after the fact and argued for an upward departure. How do you distinguish Wilson? Your Honor, in this case, the defendant, during the negotiations, he received coverage for aggravated identity theft, which carried a two-year consecutive mandatory sentence. The defendant bargained in the plea negotiation process to have that covered as not one of the charges he pled to. And in response, as the benefit of the bargain from the government's perspective, the government took out paragraph 5A. So the defendant's attorney was on full notice that the government never intended to ask for a below-guideline sentence when the fraud in this case sat far outside what I would say would be the heartland of fraud. This was a case where the record was made clear often that the conduct of this particular defendant was egregious by way of having Jane Doe's body cremated and filing a fraudulent will with a probate court. So during the plea negotiations, it was always made clear to the defense attorney in the case that the government was never looking to seek a guideline sentence. Well, but still— I would— Go ahead. I'm sorry. Go ahead, Judge Chin. I was just going to ask if there's any difference between the plea agreement here and Walker's plea agreement in the Wilson case. My understanding from reading that decision is that in this instance, paragraph 5A was the language involving the government's knowledge at the time of the plea. And in this district, at least in my time practicing here, that is always what I believe is notice to the defense attorney that the government does not intend to be bound in any way at the time of sentence. And I think that would make that distinguishable from Wilson. The language that's removed is something to the effect that this is based on information known to the government at this time? Yes, that language was not contained in this plea agreement. Right. Okay. And the government's position would be that coupled with the fact that at the time of the plea with the magistrate who took the plea, the defendant was specifically advised by the magistrate that his only guarantee was that his sentence would be capped and that the district court would be capped at the statutory maximum of 40 years and that the district court was also not bound by the guidelines. That coupled with the fact that the plea negotiations, the aggravated identity theft was removed was the benefit of the bargain for both sides. And in terms of our particular plea agreement, we also had taken out the limiting language based on the limiting language that the government would take no position within the guidelines. And we also removed the language that said the government would not seek an upward departure. I think if that language had been included, then I think the government may have been in a breach, but again, that was specifically removed so that the defendant could get the benefit of the bargain on the aggravated identity theft. And the government could also ask for what they felt was an appropriate sentence, given the guidelines were never intended to cover some of the facts presented in this case. Well, the plea agreement did not contemplate the child pornography charges, did it? No, the plea agreement, it contemplated the child pornography charges. However, the plea agreement did not calculate the appropriate number based on the miscommunication between myself and the agent. And there were some aggravating factors of some of the images that it also did not calculate. But generally speaking, it miscalculated the appropriateness of the effect of the child pornography charges. Doesn't your miscalculation give this defendant a right to waive, to withdraw his agreement to the plea agreement? Well, Your Honor, I believe at the time of sentence, there was a reason that the defense attorney did not ask for his plea agreement back. And that is because the defendant did receive the benefit of the bargain that he bargained for. It's, again, unfortunate that the guidelines calculation was incorrect. But the government made clear from the very beginning that the government never intended on seeking a guideline sentence. And that's why the four corners of the plea agreement removed all the language that any practicing defense attorney in the district knows binds the government. Was there any communication between you and defense counsel that might have suggested that the government was operating under a misapprehension about the number of images or the nature of those images? Does Your Honor mean like in terms of like written communications? Yeah, no, I was just, you know, I was struck by the defense counsel's statement about that the criminal history that was provided might be erroneous. And I mean, obviously, the defendant knew what he had done or hadn't done. And it just it struck me that there was the possibility that the defendant at least was aware that the government was operating under misapprehension. I hope this answers the question. But I believe the criminal history came to light at the time of the plea. There was an additional point for lifetime parole that was not incorporated into the plea agreement. That's how the criminal history on the record. I believe there was a comment made that the criminal history may be off. The first time anyone. That's why you have two estimates of maximum time because of the criminal history issue. But this does not deal with the child pornography information, which you allegedly had. OK, you told me it's a miscalculation. But who should bear the burden of that miscalculation? The government or Mr. Darunian? Well, look, obviously, the agent's knowledge is imputed to the government, and ultimately I'm responsible for that. The point I would make is that Mr. Darunian had no reasonable expectation that we were going to ask that the government was going to ask for a sentence within those guidelines. And to the extent at the time of sentencing, the defense attorney never asked for the plea agreement back because I believe the defense attorney understood that he had received the benefit of his bargain in the four corners of the agreement. He used those guidelines to create to advocate sympathetically before the court at time of sentence that there was that the court should be sympathetic to Mr. Darunian on the guidelines. And Mr. Darunian was an individual who there weren't many sympathetic qualities at the time. But I believe it was a calculated strategy not to ask for the plea back because he had received exactly what we bargained for. Thank you, counsel. Mr. Williams, as we change minutes for rebuttal, and before you argue, let me ask you, what relief would you want from us? Do you want to take the plea back? Your Honor, I have communicated with my client both in writing and over the phone, and he has told me that he wants to take his plea back and he wants to go back to square one. Well, square one would include all the evidence. Yes, yeah, that's his choice. I communicated as I'm required to do the risks of that. And I've been told that's what he wants to do if this court were to vacate the judgment. Could I ask you also, do you agree with the government's position that the deletion of the plea agreement as a whole, in this case, different from in Walker's case? Well, no, because... So in Walker, the government committed that based upon the information now known to the office, it will make no motion for an upward departure. So even though there was the general language about the government, the guidelines estimate is not binding. The government made some specific commitments not to move for an upward departure based on the information now. And that's missing from this plea agreement, right? Correct, but the government didn't move for an upward departure in our case. I mean, that doesn't matter. I mean, in the other point... I think where it might matter is in terms of what the defendant's reasonable expectation was. It seems to me that it was apparent that the government was going to seek a higher sentence. Why would it have asked for the removal of those provisions unless it was apparent that that was its plan? And it seems that people were aware of it. The magistrate judge was aware of it. The defendant was aware of it. Defense counsel was aware of it. So where's the reasonable expectation that the government was going to be bound to this estimate? There was no reasonable expectation that the government would not move for an upward departure. However, right, there was a estimate. And we now know that the United States Attorney's Office provided that estimate without even looking at the evidence. And we know that the defense attorney... That's a different question. That's really a misconduct motion almost. But in terms of whether the government breached the agreement, the agreement even says in the event of a mistake, the government is not bound. Well, it's not a mistake if you don't look at the evidence. I mean, if you look at the evidence... The U.S. attorney had an agent looking at the evidence. It was communicating his findings. And there was a miscommunication. I think it's not entirely fair to say that the government didn't look at the evidence in a categorical way. Right? There was a forensic report. There were a couple of forensic reports. I received a copy of the forensic report that was provided to the defense lawyer. And it's basically all redacted. I don't know what it said. Do you think it's really fair to say that the government didn't look at the evidence? I said the United States attorney's office didn't. The agent didn't prepare the report, the pre-mental estimate. I mean, I think it's fundamentally unfair to a defendant who's sitting in jail, who has no access to the evidence, to take the hit, as it were, because the professional in this case didn't do their job. The prosecutor didn't do his job. The defense attorney didn't do his job. Mr. Duranian is sitting in jail, pre-trial detention. He can't look at the evidence. But he knows what his conduct was. Well, the conduct is possession of child pornography. We know from the pre-sentence report that a majority of that was child erotica, which may not be illegal to possess. There was no objection made on that score by the defense attorney in sentencing. I have no idea why. But to hold Mr. Duranian responsible for the conduct of the professionals who should have been doing their job. I've represented a number of people charged with crimes like this, and you have to go look at the evidence. Sometimes you have to, as I have in the past, hire an expert to determine whether the pixels are sufficient to show that the images depict a real person. None of that was done in this case. But the point is, is that Mr. Duranian can't be ultimately held responsible for the negligence of the professionals. And that's my point. And I think it's fair for the court to give him another shot at this. Thank you, counsel. Thank you, counsel. Thank you both. We'll reserve decision. Thank you.